UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEROY EUGENE SHARP, III,

                         Plaintiff,

v.                                                              5:15-CV-1355
                                                                 (GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                         Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.               JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   Special Assistant U.S. Attorney
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Leroy Eugene Sharp, III, ("Plaintiff") against Carolyn W. Colvin, the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 15.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1988. (Tr. 190.) The highest level of education that he achieved was completing his GED in 2004. (Tr. 195.) Plaintiff has never worked and, therefore, does not have an employment history. (*Id.*) Generally, Plaintiff's alleged disability consists of a head injury that resulted in a fractured skull after an automobile accident, deafness in his left ear, seizures, headaches, memory problems, and anger issues. (*Id.*) Plaintiff's alleged disability onset date is November 1, 2006. (Tr. 190.)

### B. Procedural History

On September 30, 2010, Plaintiff applied for Child's Insurance Benefits and Supplemental Security Income. (Tr. 169-176, 181-189.) Plaintiff's application was initially denied on January 1, 2011, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). (Tr. 90-107.) On November 21, 2011, Plaintiff appeared before the ALJ, Bruce S. Fein. (Tr. 48-79.) On March 21, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 19-34.) On September 5, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court and, on April 1, 2014, U.S. District Court Judge Frederick J. Scullin reversed the ALJ's decision and remanded the case to the Commissioner for further proceedings. (Tr. 566-570.)

On July 23, 2015, Plaintiff appeared before the ALJ for a second hearing. (Tr. 491-529.) On September 15, 2015, the ALJ issued a written decision that was once again unfavorable to

Plaintiff. (Tr. 467-490.) The ALJ's decision became the final decision of the Commissioner on the 61st day after the decision was rendered. (Tr. 468.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (Tr. 473-480.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2006, his alleged onset date. (Tr. 473.) Second, the ALJ found that Plaintiff had the following two severe impairments: (1) status post traumatic brain injury and craniotomy with encephalomalcia, and (2) depressive disorder. (Tr. 473.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix, 1. (Tr. 473-75.) In so doing, the ALJ considered the listings in Sections 11.02, 12.02, and 12.04 (the "Listings") and the criteria in Paragraphs B and C. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [Plaintiff] should never climb ropes, ladders, or scaffolds; should avoid concentrated exposure to excessive vibration, operational control of moving machinery, unprotected heights, and exposure to hazardous machinery; and is limited to simple, routine and repetitive tasks in a low stress work setting defined as only occasional decision-making, occasional changes in a work setting, occasional judgment required, and occasional interaction with co-workers, supervisors, and/or the public. The claimant has no other exertional or non-exertional limitations.

(Tr. 475-79.) Fifth, the ALJ found that Plaintiff does not have past relevant work. (Tr. 476.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering his age, education, work experience, and RFC. (Tr. 480.)

## II. THE PARTIES' BRIEFINGS

### A. Plaintiff's Arguments

Generally, Plaintiff makes the following two arguments in support of his motion for judgment on the pleadings.

First, Plaintiff argues that the ALJ did not adhere to the treating physician rule when he failed to accord proper weight to the opinion of Dr. Glenn Thibault, M.D., because, despite some benign findings on Plaintiff's mental status examinations, the record supports Dr. Thibault's assessment of (a) poor memory and concentration, and (b) severely deficient social skills and judgment, resulting in the work-related limitations contained in Dr. Thibault's opinion. (Dkt. No. 14, at 19-21 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the following record evidence supports the assessed limitations contained in Dr. Thibault's opinion: (a) Plaintiff's Global Assessment Functioning ("GAF")[1] score of 41; (b) Dr. Dennis Noia's consultative examination findings that Plaintiff's recent and remote memory skills are moderately impaired, he was unable to recall any objects after five minutes, and could restate five digits forward and two backward; (c) Dr. Michael Giglio's treating source opinion that Plaintiff suffers from impulsiveness and anger issues as a result of his traumatic brain injury; (d) Dr. Changsoo Hahm's treating source opinion that Plaintiff suffers from mental problems as a result of his brain injury, including depression, irritability, behavior extremes, and difficulty with stress; (e) Dr. Rebecca

---

[1] "GAF is a scale that indicates a clinician's overall opinion of an individual's psychological, social, and occupational functioning." *Marvin v. Colvin*, 12-CV-1779, 2014 WL 1293509, at *2 (N.D.N.Y. Marc. 31, 2014) (Sharpe, C.J.). "GAF scores of forty-one to fifty indicate that the individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Marvin*, 2014 WL 1293509, at *2 (internal quotation marks omitted).

Fisher's treatment notes documenting that Plaintiff was hostile, uncooperative, and had poor social skills, memory, insight, and judgment, which may significantly interfere with his ability to function on a daily basis; (f) an encounter between Plaintiff and Dr. Lynn Miller during an examination in which Plaintiff acted erratic and threatening, resulting in Dr. Miller's office calling the police; (g) Plaintiff's admission that he suffers from an addiction to opiates after being treated with them for severe pain following his accident; and (h) Dr. Thibault's treatment notes documenting Plaintiff's bizarre thoughts and instability, including his statements that he believes in aliens and that he believed Pope Francis would be announcing that aliens exist on Earth and that they have been present for thousands of years. (*Id.*)

Second, and finally, Plaintiff argues that the ALJ erred at Step Five by failing to incorporate the limitations opined by Dr. Thibault into the hypothetical questions posed to the vocational expert ("VE"). (*Id.* at 21-22.) Accordingly, Plaintiff argues that the ALJ's Step Five finding is not supported by substantial evidence. (*Id.*)

### B. Defendant's Arguments

Generally, Defendant makes the following two arguments in opposition to Plaintiff's motion for judgment on the pleadings and in support of her own such motion.

First, Defendant argues that the ALJ did not traverse the treating physician rule and properly assigned "little weight" to Dr. Thibault's opinion for the following six reasons: (1) GAF scores are not dispositive in determining the severity of a claimant's mental impairments and, in any event, Plaintiff's GAF score is inconsistent with the record medical evidence as a whole; (2) Dr. Noia's opinion regarding Plaintiff's vocational abilities is consistent with the ALJ's RFC determination; (3) although Dr. Giglio opined that Plaintiff suffered from impulsiveness and anger issues, she refused to comment on Plaintiff's work-related limitations caused by these issues other than to note that it is unlikely that Plaintiff would perform well in a customer service

position, which the ALJ accounted for in his RFC; (4) Dr. Hahm noted that Plaintiff's seizures are well controlled and recommended that Plaintiff perform low-stress work, which is consistent with the ALJ's RFC finding; (5) Dr. Fisher's opinion that Plaintiff has a marked limitation in his ability to relate adequately to others is inconsistent with the record evidence demonstrating that he interacted well with most medical staff and his own reports that he is able to engage in many social activities, including maintaining a relationship with his girlfriend, talking with others daily, attending group meetings, caring for his mother, playing poker, playing basketball, going to the movies, writing and recording music, and shopping; and (6) Dr. Thibault's assessed limitations are inconsistent with the level of Plaintiff's activities noted above, especially when he is not abusing opiates, and the fact that Plaintiff has worked under the table as a mason, which does not enhance his credibility. (Dkt. No. 15, at 10-16 [Def.'s Mem. of Law].)

Second, Defendant argues that, for the reasons discussed above, it was proper for the ALJ to accord little weight to Dr. Thibault's opinion and, therefore, it was appropriate not to incorporate Dr. Thibault's assessed limitations in the hypothetical question posed to the VE. (*Id.* at 16.) Accordingly, Defendant argues that, because substantial evidence supports the ALJ's RFC determination, the ALJ properly relied on the VE's responses to the hypothetical questions that tracked his RFC finding. (*Id.*)

### III. RELEVANT LEGAL STANDARD

#### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or the determination was not supported by

substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## IV. ANALYSIS

### A. Whether the ALJ Violated the Treating Physician Rule

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 15, at 8-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 416.927(c)(2)(i)-(iv), 404.1527(c)(1)-(5). "Although the ALJ is required to explicitly consider all of the factors, the ALJ is not required to explicitly 'address or recite' each factor in his decision." *Reyes v. Colvin*, 13-CV-4683, 2015 WL 337483, at *16 (S.D.N.Y. Jan. 26, 2015); *see also Marquez v. Colvin*, 12-CV-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor."). "If it is unclear whether the ALJ explicitly considered all of the factors, the court may search the record to assure that the treating physician rule has not been traversed, but only when the ALJ gives good enough reasons to allow the court to engage in such an inquiry." *Reyes*, 2015 WL 337483, at *16 (citing

*Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004]). Finally, the ALJ is also required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 [2d Cir. 1998]). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Reyes*, 2015 WL 337483, at *14.

The Court agrees with Defendant that the ALJ did not traverse the treating physician rule and finds that his RFC determination is supported by substantial evidence. As an initial matter, Defendant correctly argues that a GAF score is but one piece of evidence to be considered and is not dispositive, in and of itself, of a disability determination. *See Carrigan v. Astrue*, 10-CV-0303, 2011 WL 4372651, at *6 (D. Vt. Aug. 26, 2011) ("[Plaintiff] claims that the ALJ's failure to discuss the GAF scores of 50 or below was error, but, as this Court has stated before, GAF scores–in and of themselves–do not demonstrate that an impairment significantly interferes with a claimant's ability to work."); *Rivera v. Astrue*, 10-CV-1035, 2014 WL 5419529, at *10 (D. Conn. Oct. 22, 2014) ("[A] GAF score of 50 does not, *ipso facto*, direct a finding of disability, or even a restrictive assessment of one's functional capacity."). Therefore, the fact that Plaintiff's GAF score may support Dr. Thibault's opinion does not automatically mean that his opinion is entitled to greater weight.

Next, Plaintiff argues that the findings and opinions of Drs. Noia, Giglio, Hahm, and Fisher are consistent with Dr. Thibault's opinion. (Dkt. No. 14, at 20 [Pl.'s Mem. of Law].) However, Dr. Noia's assessed limitations were not as severe as those assessed by Dr. Thibault. Specifically, Dr. Noia opined as follows:

> Vocationally, the claimant appears to be capable of understanding
> and following simple instructions and directions. He appears to be
> capable of performing simple and some complex tasks with
> supervision and independently. He appears to be capable of
> maintaining attention and concentration for tasks. He can regularly
> attend to a routine and maintain a schedule. He appears to be
> capable of learning new tasks. He appears to be capable of making
> appropriate decisions. He appears to be able to relate to and
> interact moderately well with others. He appears to be having
> some difficulty dealing with stress.

(Tr. 281-82.) These findings support the ALJ's RFC determination. Similarly, while Dr. Giglio was hesitant to give a full assessment regarding Plaintiff's work limitations (due to certain issues that he felt would be better addressed by specialists outside of his area of expertise), the ALJ incorporated Dr. Giglio's opinion that Plaintiff should not work in a customer service related position into his RFC. (Tr. 365.) Finally, with respect to the remaining opinion evidence cited by Plaintiff, the Court agrees with Defendant that the opinions of Drs. Fisher and Hahm support the ALJ's RFC determination for the reasons stated by Defendant in her memorandum of law. (Dkt. NO. 15, at 13-14 [Def.'s Mem. of Law].) The Court further notes that the ALJ properly evaluated the other record evidence when according Dr. Thibault's opinion little weight, including Plaintiff's activities of daily living and his credibility. (Tr. 476-78.)

B.     **Whether the ALJ's Step Five Determination Is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 15, at 16-17 [Def.'s Mem. of Law].) More specifically, because the Court finds that the ALJ's RFC determination is supported by substantial evidence, the ALJ did not commit reversible error by omitting Dr. Thibault's assessed limitations from the hypothetical questions posed to the VE.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 5, 2017
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge